STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile:  (602) 257-5299
Email:  phcourtnotices@steptoe.com

Stephanie J. Quincy (014009)
Douglas D. Janicik (021522)

Attorneys for Mesa Airlines, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| MESA AIRLINES, INC., | No. CV |
| Plaintiff, | |
| vs. | **PETITION TO VACATE ARBITRATION AWARD** |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL | |
| Defendant. | |

This is an action to vacate an arbitration award issued under the Collective Bargaining Agreement ("CBA") between Mesa Airlines, Inc. ("the Company") and the Air Line Pilots Association International ("ALPA"). The Company seeks to vacate the arbitration award in this matter on the basis that (i) the award violates the well-established federal and state public policy against racial discrimination and harassment, (ii) the award exceeds the System Board of Adjustment's jurisdiction because it contradicts the express terms of the CBA, in violation of federal law, and (iii) the arbitrator and/or System Board of Adjustment acted improperly and exhibited bias by refusing to consider material evidence that proves the Company's actions in this matter were not a violation of the CBA.

**JURISDICTION AND VENUE**

1. This is a dispute over a CBA between Mesa Airlines, Inc., a "common carrier by air" as that term is defined in the Railway Labor Act ("RLA"), and ALPA, a labor organization representing airline pilots. As such, jurisdiction in this Court is appropriate pursuant to the RLA, 45 U.S.C. § 151 *et seq*. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331.

2. ALPA's duly authorized officers or agents engage in representing or acting on behalf of its members in the Phoenix metropolitan area. Accordingly, venue in this District is appropriate pursuant to 45 U.S.C. § 153 First (q). Venue is also appropriate pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3. The Company is a Nevada corporation with its principal place of business in Phoenix, Arizona. The Company is engaged in the business of providing commercial air transportation between various U.S. and international cities. The Company employs over 700 licensed pilots to operate its aircraft, and has over 1,800 employees throughout the U.S.

4. ALPA is a union representing commercial pilots employed by the Company. The local chapter of the ALPA involved in this matter is headquartered in Phoenix, Arizona.

**FACTS**

5. The Company and ALPA are parties to a CBA which became effective December 10, 2008. A copy of the CBA is attached as Exhibit A to this Complaint.

6. In pertinent part, the CBA provides that "[e]xcept as expressly restricted by this Agreement, the Company retains all authority and rights to manage and direct its pilot workforce. Such rights include, without limitation, the right to hire; to establish, amend, suspend or revoke rules, policies and procedures; … [and] to establish employee rules of conduct." (Ex. A at 7.)

7. The Company has adopted various policies and rules to prevent and combat unlawful discrimination and harassment in the workplace. For example, the Company's Code of Conduct & Ethics provides, in pertinent part, that

> The Company views harassment and or intimidation of employees as a very serious matter…. [H]arassment and intimidation can come in the form of physical contact, verbal exchanges, notes, … as well as other forms of conduct and behavior of a similar objectionable nature…. [W]hat may be a joking matter to one individual can be considered harassment and or intimidation by the receiving party and the Company. We should also keep in mind that harassment and or intimidation can create a hostile work environment and constitutes grounds for immediate discipline, up to and including termination.

8. The Company's Employee Handbook provides, in pertinent part, that the Company

> is committed to maintaining a work environment in which every employee is treated with respect and is free from all forms of harassment, including conduct that creates a hostile, intimidating or offensive work environment…. [The Company] maintains a strict policy prohibiting sexual harassment and harassment because of race, color, national origin, ancestry, religion, creed, physical or mental disability, medical condition, marital status, age, military status, veterans' status, union or non-union status or any other basis protected under federal, state or local law…. In

> order to maintain a professional and respectful work environment, [the Company] *reserves the right to discipline any employee who engages in offensive sexual or other unlawful harassment toward an employee*….
>
> Prohibited harassment on the basis of race, color [etc.] … includes behavior similar to sexual harassment, such as:
>
> - Name calling;
> - Derogatory statements or slurs;
> - Verbal conduct, such as threats, derogatory comments, epithets, slurs, racially explicit jokes…

9. The Company's Employee Handbook goes on to provide that:

> When an allegation of harassment is reported, [the Company] will immediately undertake or direct an effective, thorough and objective investigation…. If [the Company] determines that prohibited harassment has occurred, it will take appropriate disciplinary action to ensure that the conduct will not reoccur and will assure the person claiming harassment that appropriate disciplinary action has been taken. The type of discipline administered will depend upon the severity of the conduct as well as any other factors presented in the particular circumstances. *Employees violating this policy are subject to discipline up to and including termination.*

10. On or around July 3, 2010, Marcin Kolodziejczyk, an airline pilot with the Company and a senior officer within ALPA, sent an e-mail to 17 other ALPA members, some of whom were Company employees, regarding a meeting Kolodziejczyk had attended. David Butler, the Company's Senior Vice President of Human Resources, attended that same meeting. Mr. Butler and others at the Company were engaged in negotiations with ALPA over a possible furlough of pilots. Kolodziejczyk's e-mail read:

> He was hanging from the ceiling making monkey sounds. That's all I witnessed at the meeting I was at…. I already have the chains for him, just need your help to string him up!

A copy of Kolodziejczyk's e-mail is at Exhibit B.

11. After an anonymous person left a hard copy of the e-mail in Mr. Butler's office, Mr. Butler turned the e-mail over to the Company's legal counsel. The Company

promptly initiated an investigation, during which Kolodziejczyk admitted that he knew Mr. Butler was an African-American and that he had written and sent the racially charged e-mail. Kolodziejczyk, however, originally denied that the racially charged e-mail was referring to someone in particular; later, Kolodziejczyk admitted that the e-mail was about Mr. Butler, but claimed that he did not understand how anyone could view his use of the words "chains" and "string him up" as a reference to lynching, a violent form of extrajudicial execution carried out against African-Americans in the post-Civil War era and first half of the 20th century.

12. The Company also learned that after his racially charged e-mail, Kolodziejczyk sent another e-mail to the same 17 recipients. Kolodziejczyk's follow-up e-mail said: "It was a joke and everyone in the e-mail chain is on a confidentiality agreement." This e-mail was in direct response to an e-mail from one of the 17 recipients that cautioned Kolodziejczyk that he should not "cross that line" and that he "may very well find [him]self in trouble with remarks that imply something that shouldn't be even remotely discussed." As part of the same e-mail chain, and after he also sent an e-mail saying "my apologies if I offended anyone," Kolodziejczyk wrote, "See everyone is worried, why you all know I'd say it right to his face!" (Ex. B.)

13. Based on Kolodziejczyk's racially charged and offensive remarks about Mr. Butler, Kolodziejczyk's refusal to acknowledge the gravity of his offense, and his failure to disclose key facts during the investigation, the Company terminated Kolodziejczyk's employment on August 10, 2010.

14. On August 12, 2010, ALPA filed a grievance on behalf of Kolodziejczyk, protesting the Company's decision to terminate him.

15. The parties waived the CBA's grievance procedures, and agreed to proceed directly to arbitration before the System Board of Adjustment ("Board").

16. On April 20-21, 2011, a hearing was held in Phoenix, Arizona before the Board, with Arbitrator Stanley H. Sergent, Neutral Chairman, Captain Scott M. Ewing, an ALPA representative, and Michael L. Ferverda, a Company representative, all

1  present. The parties stipulated that the issue to be decided was whether Kolodziejczyk's
2  discharge was for just cause and, if not, what the remedy should be.

3      17.    The Arbitrator issued his written decision on September 16, 2011. A copy
4  of his decision is attached at Exhibit C.

5      18.    In his decision, the Arbitrator found that "[t]he operative facts of this case
6  are largely undisputed," that Kolodziejczyk "is in fact guilty of creating and sending the
7  racially-charged e-mail," and that Kolodziejczyk "reluctantly acknowledged that the
8  racially charged comments" were directed at Mr. Butler. (Ex. C at 6, 7, 22.)

9      19.    The Arbitrator, however, concluded that the Company had no right to
10 discipline Kolodziejczyk for violating Company policy and rules because (i) the
11 Company's anti-harassment policy does not address conduct which occurs "outside of
12 the workplace" (*id.* at 22, 24, 26) and Kolodziejczyk's racially charged e-mail was sent
13 during "off-duty" time, from a union-issued cellular device, and to other union members
14 on a union computer server (*id.* at 23, 25), (ii) there was no evidence that Kolodziejczyk
15 intended for Mr. Butler to receive the racially charged e-mail (*id.* at 33), and (iii) the
16 Company "did not utilize any form of progressive discipline in this case" (*id.* at 35).
17 Ultimately, the Arbitrator dismissed Kolodziejczyk's e-mail as "internal banter" among
18 union members and "an expression of frustration" over ongoing negotiations between
19 ALPA and the Company. (*Id.* at 25, 34.)

20     20.    The Arbitrator's final award rescinded Kolodziejczyk's discharge and
21 reinstated Kolodziejczyk with full seniority and back pay from his date of termination.
22 (*Id.* at 39.)

23 **FIRST CLAIM FOR RELIEF**
24 **45 U.S.C. § 153 – Vacatur of Arbitration Award**
25 **Violation of Public Policy**

26     21.    The Company incorporates the preceding paragraphs of this Petition.
27     22.    The Company has a legal obligation to take corrective action when it is put
28 on notice of racial harassment or intimidation by one of its employees. For instance,

Title VII, 42 U.S.C. § 2000e-2 charges employers with the responsibility to maintain a workplace environment free of racial discrimination and punishes employers who fail to apply appropriate sanctions against those who commit such misconduct. Federal law also requires employers to take reasonable measures to prevent a racially hostile work environment. Moreover, section 1981 of the Civil Rights Act of 1866, as amended in 1991, 42 U.S.C. § 1981, also establishes a dominant national policy forbidding racial intimidation, discrimination, or harassment in the workplace.

23. The EEOC mandates that a "single, extremely serious incident of harassment" can create a hostile work environment based on race, such as "an actual or depicted noose or burning cross (or any other manifestation of an *actual or threatened racially motivated physical assault*), a favorable reference to the Ku Klux Klan, an unambiguous racial epithet such as the 'N-word,' and a *racial comparison to an animal*." 15 EEOC Compliance Manual § 915.003 at 15-37 & n.129 (emphasis added). The EEOC specifically directs employers to be aware of the possibility that "comments … or symbols that might seem benign to persons of the harasser's race could nevertheless create a hostile work environment." *Id*. at § 15-38 & n. 132-33.

24. The laws of the State of Arizona also reflect a strong public policy against racial discrimination and harassment. Most notably, section 41-1463 of the Revised Statutes prohibits employers from discriminating against any individual with respect to the individual's terms, conditions or privileges of employment because of the individual's race, color, or national origin. The Arizona Civil Rights Division identifies as unlawful discrimination "engaging in or tolerating harassment because of race, color, [or] national origin" or "failing to take corrective action when harassment or retaliation are reported." Arizona Attorney General, Employment Discrimination, "Get the Facts," at 4-5, available at http://www.azag.gov/civil_rights/discrimination/employment.html.

25. If forced to honor the arbitration award in this case, the Company will not be complying with its legal obligation to prevent racial discrimination and harassment in the workplace and could potentially be subject to liability. Because the federal courts

will not enforce illegal contracts or contracts that violate public policy, the Arbitrator's award must be vacated.

### SECOND CLAIM FOR RELIEF
### 45 U.S.C. § 153 – Vacatur of Arbitration Award
### Board Exceeded Its Jurisdiction

26. The Company incorporates the preceding paragraphs of this Petition.

27. The Arbitrator and/or Board in this case exceeded its jurisdiction in violation of federal law by issuing an award that is not grounded in a rational construction of the parties' CBA and that is without foundation in reason or fact.

28. First, the Arbitrator's conclusion that Kolodziejczyk did not violate the Company's anti-harassment policy because Kolodziejczyk's racially charged e-mail occurred "outside the workplace" directly contradicts the terms of the CBA. The CBA gives the Company the express right to establish rules and policies governing employee conduct "except as expressly restricted" by the CBA. The Company's Employee Handbook and Code of Conduct & Ethics prohibits racial harassment "toward an employee," defines racial harassment to include "derogatory statements or slurs" or "racially explicit jokes" in the form of "notes" or "other forms of conduct and behavior of a similar objectionable nature," and cautions that such harassment can create a hostile work environment and be grounds for discharge. Nowhere in the Employee Handbook, the Code of Conduct & Ethics or the parties' CBA does it say that racial harassment "toward an employee" or racial harassment that creates a hostile work environment must occur on Company property or during Company time. The Company never agreed to such limitations on its ability to regulate employee conduct; they are purely a creation of the Arbitrator and cannot rationally be read into the CBA.

29. Second, the Arbitrator's conclusion that Kolodziejczyk did not violate the Company's anti-harassment policy based on the fact that he did not intend for Mr. Butler to read the racially charged e-mail directly contradicts the terms of the CBA. The CBA gives the Company the express right to establish rules and policies governing

employee conduct "except as expressly restricted" by the CBA. The Company's Employee Handbook and Code of Conduct & Ethics prohibit racial harassment "toward an employee," cautions that such harassment can create a hostile work environment and be grounds for discharge, and expressly states that "what may be a joking matter to one individual can be considered harassment and or intimidation by the receiving party and the Company." Under the plain terms of the Employee Handbook and Code of Conduct & Ethics, the subjective intent of the harasser is irrelevant; nowhere in those documents or the CBA does it say that racial harassment "toward an employee" or racial harassment that creates a hostile work environment requires a showing that the harassing employee intended to injure the victim. The Company never agreed to such an intent requirement; it is purely a creation of the Arbitrator and cannot rationally be read into the CBA.

30. Third, the Arbitrator's reliance on the fact that the Company did not utilize progressive discipline directly contradicts the terms of the CBA. The CBA gives the Company the express right to establish rules and policies governing employee conduct "except as expressly restricted" by the CBA. The Company's Employee Handbook and Code of Conduct & Ethics provide that a violation of the anti-harassment policy "is grounds for immediate discipline, up to and including termination." There is no requirement for "progressive discipline," in any form, within the Employee Handbook, Code of Conduct & Ethics, or the parties' CBA. The Company never agreed to such a limitation on its ability to regulate employee conduct; a "progressive discipline" requirement is purely a creation of the Arbitrator and cannot rationally be read into the CBA.

### THIRD CLAIM FOR RELIEF

### 45 U.S.C. § 153 – Vacatur of Arbitration Award

### Bias and Improper Conduct

31. The Company incorporates the preceding paragraphs of this Petition.

32. The Arbitrator in this case improperly refused to consider evidence that, on its face, impeached Kolodziejczyk's testimony that he does not use racial slurs. The Company submitted with its post-arbitration brief a February 22, 2010 text message that Kolodziejczyk had sent to a co-worker several months before the arbitration hearing. The text message reads, "Hey Negro call me back." A copy of this text message is attached at Exhibit D. The Company first obtained a copy of this text message after the arbitration hearing; when counsel for the Company provided a copy of this new evidence to Kolodziejczyk's counsel before the deadline for submitting post-arbitration briefs, Kolodziejczyk's counsel did not challenge the authenticity of the text message but instead claimed that it was irrelevant because the recipient of the message was White.

33. The Arbitrator's refusal to consider Kolodziejczyk's use of the derogatory and demeaning term "Negro" was highly prejudicial to the Company because in concluding that Kolodziejczyk's racially charged e-mail to 17 other Company employees did not warrant any discipline, the Arbitrator erroneously found that "the Company has failed to demonstrate that [Kolodziejczyk] has made similar comments to any other employee or supervisor while working for the Company," despite testimony from two co-workers that Kolodziejczyk repeatedly used the term "nigger," "jungle bunnies," and "Kunta Kinte." (Ex. C at 11, 12, 27, 29.) The Arbitrator instead concluded that the racially charged e-mail about Mr. Butler "is the first and only instance of such misconduct on the part of [Kolodziejczyk]." (*Id.* at 38.)

34. The Company offered indisputable evidence that this was not true, but the Arbitrator excluded that evidence from consideration, exhibiting a bias that qualifies as "fraud" and/or "corruption" on the part of the Arbitrator and/or Board under 45 U.S.C. § 153 First (q) and that constitutes a violation of 45 U.S.C. §§ 153 First (i) & 184, both of which require the presentment of "a full statement of the facts … bearing upon the dispute."

35. The Arbitrator's total disregard of evidence that, on its face, impeached Kolodziejczyk's testimony that he does not use racial slurs also violated the Company's right to due process in that it was denied (i) the opportunity to defend itself fully against Kolodziejczyk's grievance, and (ii) a decision on the merits by a neutral arbiter.

### JURY DEMAND

The Company requests a jury trial for all issues which may be tried to a jury.

### PRAYER FOR RELIEF

For the reasons set forth above, the Company respectfully requests that this Court:

a.   vacate the Arbitrator's September 16, 2011 award;

b.   order a rehearing of Kolodziejczyk's grievance before a different neutral arbitrator chosen by the Court, and retain jurisdiction over this matter to enter a decree upon any subsequent award;

c.   award the Company its costs and attorneys' fees in bringing this action; and

d.   order such additional relief as the Court deems necessary and just.

DATED this 26th day of October, 2011.

STEPTOE & JOHNSON LLP

By  s/ Stephanie J. Quincy
  Stephanie J. Quincy
  Douglas D. Janicik
  Collier Center
  201 East Washington Street, Suite 1600
  Phoenix, Arizona 85004-2382

Attorneys for Petitioner